**STATE, Plaintiff-Appellee, v. ANDLAUER, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 2309.   Decided May 23, 1955.

450

Mathias Heck, Prosecuting Attorney, Walter A. Porter, Asst. Prosecuting Atty., Fred M. Kerr, Dayton, for plaintiff-appellee.

Benjamin Horn, Albert H. Scharrer, Hon. Mason Douglass, Dayton, for defendant-appellant.

## OPINION

By HORNBECK, J.:

This is an appeal from a judgment and sentence of defendant-appellant on a conviction by a jury of guilt of a charge of abortion. The State took on the obligation of establishing by the requisite degree of proof that the defendant committed a criminal abortion on one Mary Perry and that by reason thereof, she died. The means by which it is claimed the abortion was produced was by the introduction into the cervix of Mary Perry of an abortifacient paste known as Interfearin. It appeared that the compound was a soap, and the effect, whether it could and did produce the abortion and the death of Mary Perry, were issues concerning which extended and prolonged expert testimony was adduced. The trial covered a period of some three weeks and was expertly tried in all of its aspects. Indeed, the ability displayed by respective counsel, particularly in the fields of medicine, chemistry and pathology, to which much of the evidence was directed, was of the very highest professional ability. There was ample support in the record, if the testimony adduced in behalf of the State be true, to support the verdict which the jury returned. The weight of the evidence is not urged in the assignments of error.

This case is unusual in at least two particulars. One, in the extreme care taken by the trial judge to prevent any discussion in the presence of the jury respecting the admissibility of testimony proposed to be offered by the State. We have knowledge of no case where the trial judge has been so alert to keep from the jury any possible collateral subject that could probably have influenced its verdict. This procedure certainly is to be commended, although seldom followed. Two, the Bill of Exceptions submitted in this case. It is a rule which should have no exception that the typewritten pages comprising the Bill of Exceptions should be the original sheets. Instead, in this Bill more than half of the 1574 pages are carbon copies, some of which are almost illegible. Notwithstanding this handicap we have, to the best of our ability, read every page of this voluminous record.

Twenty-two specific errors are assigned, most of which are not urged in the briefs of appellant. These assigned errors which counsel do not specially consider, we hold not to have been well made.

The other errors may be grouped. It is claimed that prejudice resulted to the appellant from questions and conduct of counsel for the State in regard to the testimony of Detective Ralph H. Hogan. Assignments of error Numbers 14, 15 and 16.

Assignment of error No. 17: Error by reason of conduct of counsel for the State in his argument to the jury.

Assignments of errors Nos. 18, 19 and 20: Failure of the court to properly instruct jurors as to their duty in the event they could not agree with the other jurors.

Assignment of error No. 12: Error in the general charge of the court as to "reasonable doubt."

The first question presented, and the one most fully argued in the briefs, is that which relates to the testimony of Detective Hogan and the conduct of counsel for the State pertaining thereto.

Mrs. Andlauer, wife of defendant, testified in his behalf. On cross-examination she was interrogated whether or not she had had a conversation with Detective Hogan in the presence of others than the defendant in which she said, "I told him not to do it." She denied any such conversation. This testimony was admitted without objection. In rebuttal, Detective Hogan was called to the stand, and counsel for the State put certain questions to the witness, which were answered:

"Q. I will ask you whether, in your presence, Ruth Green made a statement to Mrs. Andlauer about 'This is about the Mary Perry case'?

A. She did."

Objection was made to this answer and to any conversation, which objection was sustained. The court indicated to the witness that he had theretofore in chambers cautioned him not to answer any questions about the conversations in question. The prosecutor, continuing, put this question: "Now, then, I ask you whether Mrs. Andlauer said to you and the other persons there, 'I told him not to do it.' Answer: That's right." The court then said to the witness: "Don't answer it. Now you knew you shouldn't have answered. The court told you in chambers before you came out here; the jury will be instructed in disregard that answer, or any other answer along that line."

The prosecutor insisted upon propounding "last question on this point." Two questions were then put and answers made out of the presence of the jury. The answers to the questions were that Mrs. Andlauer said "I begged him not to do it—and if he continued to do it I would leave him," and that "He doesn't need that kind of patients, or the money, but he was so stubborn he wouldn's listen."

It appears that the court, prior to the time when Detective Hogan took the stand, had instructed him that he should not answer questions relating to the claimed conversation with Mrs. Andlauer. If Detective Hogan understood this admonition, he breached it when he hurriedly answered respecting the conversation, but counsel for the State insists that he did not know of the instruction of the court to the witness when he put the questions to him in the hearing of the jury.

Appellant insists that the answers to the questions and the conduct of counsel in the circumstances appearing resulted in error prejudicial to the defendant. It is claimed that the answers originally given by Mrs. Andlauer on cross-examination were not admissible because hearsay and that the rebuttal testimony could not have been admissible either as substantive proof or by way of impeachment of Mrs. Andlauer. The trial judge acceded to the contention of appellant and fully instructed the jury of his rulings.

Whether or not the conduct of the witness was contemptuous of the court's order to him was a matter strictly within the judgment of the trial judge. He did not see fit to take steps other than to criticize the witness and to caution the jury to disregard the testimony. We cannot say, because there is nothing whatever to establish it, that the prosecuting attorney is chargeable with any misconduct in conducting the examination of the witness. It may not be said that he knew of any prior instructions of the court to the witness. He had the right to make his record as against the possibility that the court would err in ruling against him, and if he desired to save the question the procedure was entirely proper. If the principle of law controlling the admissibility of the testimony given and proffered was entirely clear, and with that knowledge the prosecutor insisted upon propounding questions which he knew to be improper, we would have an entirely different question. No bad faith of the prosecutor appears.

In connection with the admissibility of the testimony of the detective as to the conversations with Mrs. Andlauer, several interesting questions arise, the answers to which are not simple nor well-defined. We are not satisfied, nor do we need be, that the proffered testimony was not admissible for the purposes of impeachment affecting the credibility of the witness, Mrs. Andlauer, by reason of her prior inconsistent statements, if made.

Ruth Green, a nurse formerly in the employ of the defendant, had testified for the State that by prior appointment Mary Perry had come to defendant's office, that she told defendant that she was pregnant and desired an abortion and that the witness, in the presence of defendant, tested Mary Perry upon an electronic diagnostic machine, which, by numbers registered on certain dials thereof, showed that Mary Perry was three months pregnant. That the numbers registered on the machine were set down on a card in the name of Mary Perry, which name was in defendant's writing on the card found in the files of the defendant's office. Neither this witness nor any other witness for the State attributed any knowledge of the arrangement between the defendant and Mary Perry to Mrs. Andlauer. She testified that she did not know Mary Perry, had no knowledge that she was under treatment. Her testimony, if accepted by the jury, cast doubt as to the dependability of the machine as to the diagnosis of pregnancy or duration thereof. If Mrs. Andlauer made the statements testified by the detective and proffered by the State, they had the effect of developing variance with her testimony at the trial and may have affected her credibility. The testimony, if admissible, was for the purpose of impeachment only, for which the ground had been properly laid by the questions propounded to Mrs. Andlauer on cross-examination, if the answers thereto were admissible. The admissibility of this testimony was not challenged until the questions were put to Detective Hogan.

In **Kent v. State, 42 O. O. 426, 431,** Judge Okey discusses the rule as to the admissibility of impeaching testimony:

"It is said in a multitude of cases, and may be regarded as well settled, that where a party cross-examining a witness, desires to call a witness to contradict him, the right to do so will, in general, be deter-

mined by the answer to the question, whether the matter offered in contradiction is in any way relevant to the issues, **or such as tends to show prejudice or interest,** with respect to the cause or the parties, on the part of the witness sought to be contradicted. If an affirmative answer can be given to the question, the contradiction will be permitted, and, ordinarily, otherwise not." (Emphasis ours.)

The court cites and comments upon Attorney General v. Hitchcock, 1 Welsby, H. & C. 91, an early leading English case, in particulars like ours, in support of its conclusion. An examination of Wigmore on Evidence, Third Edition, pages 684 to 697, is helpful, but too extended for quotation here. At page 687, Section 1018, Wigmore says:

"It is 'the repugnancy of his evidence' that discredits him, obviously the Prior Self-Contradiction is not used assertively; i. e. we are not asked to believe his prior statement as testimony, and we do not have to choose between the two. We simply set the two against each other * * *. It is the repugnancy and inconsistency that demonstrates his error, and not the superior credibility of the prior statement."

"In short, the prior statement is not primarily hearsay, 'because it is not offered assertively; i. e.—not testimonially * * *.' It follows therefore, that the use of Prior Self-Contradictions to discredit is not obnoxious to the Hearsay Rule."

It is clear that the testimony of Mrs. Andlauer was admissible within the discretion of the trial judge, even though the State was bound by her answers and could not impeach them.

The case of **State v. Weaver, 120 Oh St 97,** upon which appellant relies, does not upon the facts developed support his contention that the testimony sought to be impeached was hearsay. In the cited case, the person who made the statements sought to be introduced was not upon the stand and the testimony was offered by a third party who heard the statements. Obviously, the evidence of the third party was hearsay.

If the testimony of Detective Hogan proffered by the State was admissible then, clearly, the defendant was not prejudiced by the rulings of the court, the conduct of counsel or the witness.

We discuss its admissibility at some length to demonstrate that the prosecutor had good reason to insist upon the reception of the evidence.

However, if it be conceded that the testimony of the witness Hogan was inadmissible, we cannot find under the controlling section of the Code, §2945.83 **(E) R. C.,** that what occurred was prejudicial to the defendant. This statute is but legislation promulgating the rule laid down in the early case of **McHugh v. State, 42 Oh St 154,** first syllabus:

"In a proceeding to reverse a judgment in either a civil or criminal case, the court regards the record as free from error until the contrary clearly appears; * * *."

The numerous cases following McHugh v. State, supra, are set out in the opinion by Judge Wiseman of this Court in **State v. Hickman, 77 Oh Ap 487, 488.**

The following cases support the conclusion that the action of the trial judge in directing the jury to disregard the answer of Detective Hogan cured any error that may have resulted from his hasty reply:

Mims v. State, 16 Oh St 232, where there was a conviction of murder in the first degree; Klein v. Thompson, 19 Oh St 569, 571, 572; Henkle v. McLure, 32 Oh St 202; Logan v. The Cleveland Railway Co., 107 Oh St 211, 215.

We are strengthened in our position by the fact that the trial judge, who was in close touch with the jury and its reaction, and better able than we to judge the effect of the question answered by the detective and the subsequent conduct of the prosecuting attorney, held, against the contention of appellant on his motion for new trial.

The next errors assigned relate to the failure of the court to charge the jury more at length respecting its obligation to reach a verdict, if possible, and the time that it would be required to consider the case before being released.

We set forth all the occurrences during the trial which are germane to this assignment of error.

At the conclusion of the general charge, and after the trial judge had inquired of counsel if he had neglected anything in his charge, he said:

"I will tell you again (to jury) it must be a unanimous verdict before your foreman signs it.

"Mrs. Kimmel (Juror): What if it isn't?

"The Court: Then, you haven't a verdict.

"Mrs. Kimmel: How long do we have to stay?

"The Court: The court will tell you."

Soon thereafter the jury was sent to lunch, returned and resumed consideration of the case at 2:55 p. m. The court entered the jury room, and the following statements were made:

"The Court: Is there any probability—this is addressed to your foreman only—is there any probability of your agreeing within a short time, or any time this evening?

"Mr. Davis: (The Foreman): Well, the way it has been going, no.

"The Court: You have been out more than four hours now; we tried this case about three weeks; I would like for you to agree if you possibly can; you think you would like to have more time to deliberate, after I send you out to dinner with the bailiff, and then return again for further deliberations?

"Mr. Kerr: What was their answer when the court asked them about the probability of a verdict?

"The Court: Will you answer to Mr. Kerr again, is there any probability of your agreeing?

"Mr. Davis: No. No.

"The Court: You think after I send you out to dinner and you would be refreshed and come back, on any further consideration of the case you might be able to reach an agreement?

"Mr. Davis: Your Honor, it is not a definite statement—in two hours we might be able to reach an agreement.

"The Court: Do you wish to keep on as you have or you wish to go out to dinner, or not? How many want to go out?

"Mr. Kerr: I think they should be allowed to go out.

"The Court: I want to give them an opportunity, some of them have indicated a matter of a couple more hours."

Counsel conferred with the court at the bench.

"The Court: How many in this jury think you can get together for further deliberation and arrive at a verdict, hold up your hands, that think with some further deliberations you might be able to reach a verdict?"

(Eight, or approximately that many, held up their hands.)

"The Court: I will send you out to dinner; you will go. with the bailiff; don't discuss the case among yourselves or anyone else, and you will have further time for deliberations; if you arrive at a verdict before you go to dinner let me know. **If you cannot get together in a reasonable length of time the court will have to discharge you,** but I want to give you every opportunity to arrive at a verdict." (Emphasis ours.)

Then, out of the presence of the jury, the following statements were made:

"Judge Douglass: This morning, before we left the courtroom one juror asked what if we can't agree? It is my position that with an inquiry like that the court should instruct the jury in response to that inquiry, that if they can not agree the court will discharge the jury from further consideration of the case; I think that they should know that if they go out and come back; I don't see how it hurts anybody."

It will be noted that in the emphasized part of the foregoing statement by the judge to the jury, he had charged them in practically the same language as in Judge Douglass' request for a charge. Continuing:

"Mr. Kerr: We don't think there is any question being made now.

"The Court: There was after you walked out.

"Mr. Kerr: I am sorry, but we do not feel the court is called upon at this time to make any statements to the jury.

"Judge Douglass: Will you let the record show there were two jurors tried to ask the court a question when we left the courtroom and it started this morning when he charged the jury and we think the court should answer if they cannot agree the court will discharge the jury from further consideration of the case."

Thereafter the court returned to the jury room.

"The Court: (To the jury): You asked a question as the lawyers went out; I couldn't answer it and didn't answer it because I am not supposed to. Somebody asked me a question like this: 'What if we can't agree?' Some lady asked it. **If you can't agree the court will have to discharge you from further consideration of the case,** it will have to be tried before another jury at another time—**if it is tried.** Now, are there any questions? I am going to send you out to dinner then." (Emphasis ours.)

"Mrs. Kimmel: (A juror): How much longer do we have to decide?

"The Court: **I am going to give you a reasonable length of time.** If you arrive; you knock on the door and we will get all counsel together; if you cannot arrive at a verdict and you knock on the door. **I will give you what we think is a reasonable length to arrive at your verdict.**" (Emphasis ours.)

The jury then went to dinner, and resumed deliberations at 8:50 p. m., and returned the verdict at 9:25 p. m. When they left for dinner, Mr. Scharrer said:

"Counsel for defendant objects and excepts to all the remarks of the court to the jury and especially where the court said 'If you can't agree the court will have to discharge you from further consideration of the case. It will have to be tried before another jury at another time.'"

We observe that in this objection and exception, and in defendant's brief, counsel did not quote the statement of the trial judge as to the necessity of another trial in its entirety, namely, that significant part, which we have heretofore emphasized, "if it is tried."

The juror, Mrs. Kimmel, voted with the other eleven members of the jury to convict the defendant and so answered when the jury was polled. Thereafter, she filed an affidavit, the gist of which was that upon her inquiries: "How much longer do we have to stay?" and, later: "How much longer do we have to decide?" the answers of the court were such that, in connection with the charge that the verdict had to be unanimous, "she thought she had to agree with the majority of the jurors who were favoring conviction." She also says that "at no time was her answers from the court informative of what her duties and responsibilities were, as a juror, in the event she disagreed with the other jurors."

It is manifest from the full proceedings which we have set out that the trial judge took unusual precaution, not only to adequately inform the jury of its duties and what would be required for it to return a verdict, but that it would be discharged if it could not reach such a verdict within a reasonable time. The court acceded to practically every request of counsel to further charge the jury. Upon any proper view of the language of the trial judge, the affiant could not have misunderstood its meaning. She was under no compulsion to find a verdict against her will, or that if she did not do so, she would in any manner be restrained for an unreasonable length of time.

In this connection we have accepted and considered the affidavit of the juror which, in probability, may not be properly so considered for two reasons: First, it is not properly brought upon the record by being carried into a Bill of Exceptions. **Grasselli Chemical Company v. Martinec, 5 Abs 575; Garner v. White, 23 Oh St 192; Gallier v. Gallier, 27 O. L. R. 346; Gerak v. State, 22 Oh Ap 357,·367, 368.**

Second: Affidavits such as the one under consideration may not be accepted to impeach the verdict of the jury of which the affiant was a member. **Farrer v. State, 2 Oh St 54; Holman v. Riddle, 8 Oh St 385; Kent v. State, 42 Oh St 426; 39 O. Jur. 1110.**

The next assignment is that the court erred in defining the term "reasonable doubt" to the jury in the use of the following language:

"You will, then look to all the evidence; and if that satisfies you to a reasonable and moral certainty of the defendant's guilt you must say so. If, on the other hand, you are not satisfied from the evidence to a reasonable and moral certainty of the defendant's guilt, but find only that there are strong probabilities of guilt, it is your duty to acquit."

The court had theretofore charged the jury as to reasonable doubt in the language of the statute as required to do. It is to be noted that counsel for the State and one counsel for the defense, in arguments to

the jury, used the term satisfaction of the guilt of the defendant to a "moral certainty." We realize that the use of the additional term "reasonable certainty" is somewhat different than ordinarily employed  However, upon a fair consideration of the charge in its entirety, we find no prejudicial error was committed in the definition of reasonable doubt as given by the trial judge.

We are satisfied that the defendant had a fair trial.  As we have said before, unusual care was taken by the trial judge to assure that defendant had every possible protection as against any error occurring to his prejudice during the extended period that his cause was being presented to the jury.

The judgment will be affirmed.

MILLER, PJ, WISEMAN, J, concur.